**UNITED STATES of America,
Plaintiff,**

**v.**

**Kil Soo LEE, Defendant.**

**No. CR. 01–00132 SOM.**

United States District Court,
D. Hawai'i.

Aug. 30, 2001.

---

Malachi Jones, Kenneth M. Sorenson, Susan French, Office of U.S. Atty., Honolulu, HI, for plaintiff.

Alexander Silvert, Office of Fed. Public Defenders, Honolulu, HI, for defendant.

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS

MOLLWAY, District Judge.

### I. INTRODUCTION.

This case raises the question of whether a person arrested in American Samoa for allegedly committing federal crimes in American Samoa may be charged and tried by the federal district court in the District of Hawaii. American Samoa is indisputably not part of the District of Hawaii. Under the law applicable to federal crimes, Lee must be tried in a "district" by a "district court." The questions before this court are therefore whether American Samoa is such a "district," and whether any American Samoa court qualifies as a "district court." Because the answer to both questions is "no," and because the District of Hawaii was the first district to which Defendant Kil Soo Lee ("Lee") was brought, the case is properly in Hawaii. Accordingly, the motion to dismiss is denied.

### II. FACTUAL BACKGROUND.

Lee ran a factory in American Samoa. It is asserted that the Samoan government, having supported Lee's business efforts, has so far declined to charge Lee with crimes relating to his business. On March 23, 2001, federal authorities sought and obtained in the District of Hawaii a warrant for Lee's arrest. Federal agents then arrested Lee in American Samoa and brought him directly and without his consent to Hawaii. The agents did not go through the extradition process for bringing Lee from American Samoa to Hawaii.

On April 5, 2001, Lee was indicted for alleged violations of 18 U.S.C. §§ 1584, 1589, and 1594. The indictment charged Lee with having knowingly and willfully held Vietnamese factory workers in involuntary servitude (Count 1). The indictment further charged Lee with having attempted to provide and obtain the labor of the Vietnamese factory workers by threats of harm, physical restraint, and/or abuse of the law and legal process (Count 2).

### III. THE ISSUE BEFORE THIS COURT IS ONE OF VENUE.

Although Lee moves to dismiss for lack of jurisdiction or for improper venue, Lee's motion raises issues only of venue, not of jurisdiction. Lee argues that his trial should be held in American Samoa in what he sees as courts that are federal in nature and equivalent to federal district courts. Lee is arguing nothing more than that "another district court is the proper venue." Accordingly, the court analyzes Lee's motion as a motion to dismiss for improper venue.[1]

---

1. The court recognizes that, in the normal case, the government ultimately bears the burden of proving venue by a preponderance of the evidence. *United States v. Jones,* 231 F.3d 508, 516 (9th Cir.2000); *United States v. Ruelas–Arreguin,* 219 F.3d 1056, 1060 (9th Cir.), *cert. denied,* 531 U.S. 1024, 121 S.Ct. 594, 148 L.Ed.2d 508 (2000). This motion, however, does not involve evidence at all. The facts relevant to this motion are undisputed. The venue issues raised by this motion are issues entirely of law.

Jurisdiction would be implicated if Lee were arguing that no district court anywhere could try Lee. That might be the case if, for example, Lee were arguing that the charge against him involved a violation of only Samoan law, and that the alleged offense had not been committed within a federal enclave. In that event, Lee would be arguing that no federal court could try him. Lee is not arguing that the United States District Court for the District of Hawaii is the kind of court that cannot try cases brought under Title 18. Lee is instead contending only that the District of Hawaii is the wrong place for this case.

## IV. ANALYSIS.

### A. 18 U.S.C. § 3231.

American Samoa is an unincorporated territory of the United States. *See* 48 U.S.C. § 1661 (1987); *United States v. Standard Oil Co. of Cal.,* 404 U.S. 558, 560, 92 S.Ct. 661, 30 L.Ed.2d 713 (1972) (holding that section 3 of the Sherman Act applies to American Samoa because it is a territory of the United States); *King v. Morton,* 520 F.2d 1140, 1142 (D.C.Cir. 1975) ("American Samoa is an unincorporated territory of the United States"). American Samoa has no federal district court, *see* 28 U.S.C. §§ 81–144 (1993 & Supp.2001), and is not part of the District of Hawaii. *See* 28 U.S.C. § 91 (1993).

Lee is charged with having violated provisions in Title 18 of the United States Code. There is no dispute that these laws apply in American Samoa, a United States territory. *See* 18 U.S.C. § 5 (2000) (defining "United States" as including "all places and waters, continental or insular, subject to the jurisdiction of the United States, except the Canal Zone").

Lee argues that he should be charged and tried by American Samoan authorities. In deciding this issue, the court begins with the United States Constitution, which states that the "Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed." U.S. Const. art. III, § 2, cl. 3. With certain exceptions not relevant here, Rule 18 of the Federal Rules of Criminal Procedure similarly requires a prosecution to be in the "district in which the offense was committed." Fed. R.Crim.P. 18; *see* 18 U.S.C. § 3232 (2000). If an alleged offense was not committed in an area that is a "district," Congress has directed that the trial "shall be in the district in which the offender ... is arrested or is first brought." [2] 18 U.S.C. § 3238 (2000). Accordingly, to determine whether venue is proper in American Samoa or in this court, the court must first determine whether American Samoa is a "district."

■ Lee argues that American Samoa is a "district" and that its courts are equivalent to "district courts." When it accepted American Samoa's cession of land to the United States, Congress specified that, "[u]ntil Congress shall provide for the government of [American Samoa], all ... judicial ... powers shall be vested in such person or persons ... as the President of the United States shall direct." 48 U.S.C. § 1661(c) (1987). As of July 1, 1951, the administration of American Samoa was transferred to the Secretary of the Interior. *See* Exec. Order No. 10264, 16 Fed.

---

**2.** If an alleged crime is not committed in any district, and if the alleged offender is not arrested or "first brought" into a district, an indictment or information may also "be filed in the district of the last known residence of the offender ..., or[,] if no such residence is known[,] the indictment or information may be filed in the District of Columbia." 18 U.S.C. § 3238 (2000).

Reg. 6419, *reprinted in* 48 U.S.C. § 1662 (1987). Lee argues that, because the Secretary of the Interior has been vested with "all judicial ... powers," and because the Secretary of the Interior has set up American Samoa's courts, those courts necessarily have the exclusive power to try him for violations of Title 18 of the United States Code. This court disagrees.

The federal judicial "districts" are statutorily defined. *See* 28 U.S.C. §§ 81–144 (listing all judicial "districts"). American Samoa is nowhere defined as a judicial district. Moreover, its courts have never been given the powers that the "district courts" in the statutorily defined "districts" have. American Samoa's courts therefore lack the power to prosecute violations of Title 18.

There is no dispute that the courts of American Samoa have jurisdiction to prosecute violations of American Samoan law. American Samoan law has apparently incorporated all of Title 18 of the United States Code, making violations of Title 18 violations of American Samoan law. However, under 18 U.S.C. § 3231, the United States district courts have the exclusive jurisdiction to prosecute federal crimes. 18 U.S.C. § 3231 (2000) (the "district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States"). Thus, unless the courts of American Samoa are "district courts of the United States," the courts of American Samoa have jurisdiction to prosecute violations of American Samoan law only. This is so even if violations of American Samoan law are also violations of federal law. The identical federal crimes would have to be tried in a federal district court.

Lee's argument that the term "district" was intended to encompass United States territories with courts vested with authority by Congress falls short in several respects.

Lee's argument would require the conclusion that Congress intended that defendants tried for federal crimes in American Samoa be denied the full panoply of rights and protections available to defendants in the United States district courts. Lee's argument would have defendants in both systems subject to the same federal penalties without having been afforded the same rights. The court finds no reason to conclude that Congress intended this disparity.

American Samoa does not have a grand jury system. A felony charge is initiated by the filing of an information. *See* Amer. Samoa Rules of Crim. P. 7(a).

Trial by jury in American Samoa is a relatively recent phenomenon. American Samoa's constitution does not provide for trial by jury, although defendants in American Samoa are apparently receiving jury trials as a matter of practice. This appears to have occurred in the wake of a decision by the federal district court for the District of Columbia holding that, in a criminal trial for violation of American Samoan tax law, a defendant tried in American Samoa must be offered a jury trial as a matter of federal law. *King v. Andrus,* 452 F.Supp. 11 (D.D.C.1977). That case enjoined the Secretary of the Interior from enforcing the judgment entered against a defendant who had not been offered a jury trial.

There is no appeal as of right of any conviction in an American Samoan court to an Article III court. Instead, defendants may petition for certiorari to the United States Supreme Court, or bring a civil action against the Secretary of the Interior, assuming they satisfy the jurisdictional requirements for such civil suits. *See Morton,* 520 F.2d at 1145.

Moreover, in American Samoa, lawyers are not required to have attended an American law school. Even if, in practice, most of American Samoa's attorneys have graduated from American law schools, High Court Rule 137 (1989) allows someone who is a member of only a foreign country's bar to join American Samoa's bar if, among other things, "the English common law forms substantially the basis of that country's jurisprudence." A defendant tried in American Samoa could, at least in theory, appear before a judge schooled entirely outside of the United States. *See, e.g.,* Amer. Samoa Code § 3.1010 (1992) (requiring that judges in American Samoa be "learned in the law" but not requiring training in American law). While lawyers or judges trained outside of the United States are frequently more learned than those trained in the United States, a defendant cannot always rely on that circumstance. The court also notes that the Secretary of the Interior may hire and fire appellate justices in American Samoa at the Secretary's discretion, leading to possible separation of powers problems between the executive and judicial branches of government. *See Morton,* 520 F.2d at 1160 (Tamm dissent); Revised Const. of Amer. Samoa, Art. III, § 3 ("The Secretary of the Interior shall appoint a Chief Justice of American Samoa and such Associate Justices as he may deem necessary").

In arguing that trial is nevertheless proper in American Samoa, Lee cites *Meaamaile v. American Samoa, et al.,* 550 F.Supp. 1227, 1235–36 (D.Haw.1982), for the proposition that "territorial courts are competent to decide cases arising under the Constitution and laws of the United States." However, *Meaamaile* did not involve a criminal statute and did not discuss the restriction in § 3231 of federal criminal jurisdiction to federal district courts.

■ In *Meaamaile,* Judge Samuel P. King held that the High Court of American Samoa, as a legislative as opposed to an Article III court, was competent to decide the plaintiff's federal civil rights claim because that claim did not necessarily have to be heard by an Article III court. *Id.* Judge King further found that American Samoa's courts could try the plaintiff's *in personam* admiralty claims. *Id.* at 1236. It is important to recognize that the claims in *Meaamaile* were claims that could have been brought in either a state or federal court. The plaintiff's civil rights claims were brought under 42 U.S.C. §§ 1981, 1983, and 1985. *Id.* at 1229. Such claims may be brought in any state or federal court. *See, e.g., Felder v. Casey,* 487 U.S. 131, 139, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988) (noting that state and federal courts have concurrent jurisdiction over § 1983 claims); *Legal Econ. Evaluations, Inc. v. Metropolitan Life Ins. Co.,* 39 F.3d 951, 956 (9th Cir.1994) (noting that federal and state courts have concurrent jurisdiction over § 1983 claims); *DeHorney v. Bank of Amer. Nat. Trust and Sav. Ass'n,* 879 F.2d 459, 463 (9th Cir.1989) ("we hold that the state courts enjoy concurrent jurisdiction over section 1981 causes"); *Bennun v. Board of Governors of Rutgers,* 413 F.Supp. 1274, 1279 (D.N.J. 1976) (holding that state and federal district courts have concurrent jurisdiction over cases arising under 42 U.S.C. § 1985). It is therefore clear that such civil rights claims may also be brought in a territorial court. Similarly, Judge King concluded that the plaintiff's *in personam* admiralty claims could have been brought in either a state or federal court. *Meaamaile,* 550 F.Supp. at 1236. *Meaamaile* is therefore distinguishable from Lee's case; that civil case was not governed by the requirement in § 3231 that a federal prosecution must occur in a federal district court.[3]

---

**3.** Judge King noted in *Meaamaile* that, as this court notes, the issue of whether a matter

■ While Congress, in 48 U.S.C. § 1661, gave the President the right to designate those who would have "all" judicial powers in American Samoa, Congress never expressly turned over to the executive branch jurisdiction over federal crimes. That jurisdiction was vested exclusively in United States district courts. The delegation of "all" judicial powers in American Samoa was not an implicit limitation on or repeal of § 3231. Instead, Congress was conferring the power to establish courts in American Samoa with jurisdiction over matters not otherwise in the exclusive jurisdiction of other courts.

Lee is presumably not arguing that the term "all" should be read as containing no restrictions. Otherwise, Lee would have to contend that American Samoa's courts would, in some instances, have broader powers than federal district or circuit courts. A district court, for example, cannot try matters that are reserved for the Court of Federal Claims. If "all" contains no limitation, American Samoa's courts could address such matters. Similarly, the Ninth Circuit may not hear appeals from patent infringement decisions by this court. Such appeals are heard by the Federal Circuit. Reading "all" as having no limitation would presumably have the High Court of American Samoa hearing patent appeals that the Ninth Circuit could not hear. There is no reason for this court to conclude that Congress intended to confer such unlimited jurisdiction on American Samoa's courts. If "all" powers are indeed limited, then the limitation of § 3231 must apply.

The authorities Lee urges this court to follow do not support Lee's contrary reading of § 3231. Lee relies heavily on the reasoning in *Ex Parte Bollman*, 4 Cranch 75, 8 U.S. 75, 135–136, 2 L.Ed. 554 (1807).

*Bollman* was decided just a few years after the Louisiana Purchase. The defendants were suspected of having committed treason by levying war against the United States while in the "territory of New-Orleans." The matter was before the Court on a pre-indictment writ of habeas corpus, with the petitioners arguing that they could not be detained on the treason charges. The essential holding by the Court was that, as there was no evidence supporting the treason allegations, the defendants had to be released:

It is therefore the opinion of a majority of the court, that in the case of Samuel Swartwout there is not sufficient evidence of his levying war against the United States to justify his commitment on the charge of treason.

Against Erick Bollman there is still less testimony. Nothing has been said by him to support the charge that the enterprize in which he was engaged had any other object than was stated in the letter of Colonel Burr. Against him, therefore, there is no evidence to support a charge of treason.

. . . . .

. . . .[T]herefore, as the crime with which the prisoners stand charged has not been committed, the court can only direct them to be discharged.

*Id.* at 135–36. The Court noted that "fresh proceedings" might be instituted against the defendants on a different record.

In what may well be mere dicta, the Court went on to note that, if the defendants could be tried at all, their trial could not occur in the District of Columbia. The Court noted that no part of the alleged crimes had occurred in the District of Columbia. *Id.* at 135. Nor does it appear

should be tried here or in American Samoa is not a jurisdictional issue. *See id.* at 1235 n.

11 ("The issue before this court is not a jurisdictional one").

from the opinion that the defendants had been arrested in or first brought to the District of Columbia.

The predecessor of § 3238 that applied in *Bollman* provided that venue was proper where the offense was committed or, if no tribunal existed that could try the offense, at the place with a tribunal to which the defendants were first brought. Because, the Court held, Congress had provided for a tribunal in the New Orleans territory for the offenses alleged, the defendants, assuming they were to stand trial, should be tried in the New Orleans territory. *Id.* at 136. No authority establishes that Congress similarly provided for American Samoa's courts to try federal crimes.

Lee also relies on *United States v. Chapman*, 14 F.2d 312 (W.D.Wash.1926), for the conclusion that he must be charged and tried in American Samoa. *Chapman*, however, involved an entirely different situation. In *Chapman*, the defendant allegedly embezzled money from the United States Court for China. An information charging Chapman with this federal crime was filed in the United States Court for China. Chapman was subsequently found in the Western District of Washington.

At issue was a provision stating that, for any crime against the United States, an alleged offender could be tried "before such court of the United States as by law has cognizance of the offense." The provision further stated that, "where any offender or witness is committed in any district other than that where the offense is to be tried, it shall be the duty of the judge of the district where such offender or witness is imprisoned, seasonably to issue ... a warrant for his removal *to the district* where the trial is to be had." *Id.* at 313 (emphasis added). The court in *Chapman* noted that Congress had created the United States Court for China and had given

that court jurisdiction over the crime Chapman was charged with having committed. *Id.* at 313. In fact, Congress had given the judge, prosecutor, marshal, and court clerk of the United States Court for China "authority possessed by the corresponding officers of the District Courts of the United States." *Id.* Although the United States Court for China was not specifically designated as a district court, the *Chapman* court found that unimportant because the statute it was relying on used "district" in the generic sense, that is, as referring to "the territory of the tribunal having judicial cognizance of the offense." *Id.* Because the United States Court for China had judicial cognizance of the crimes Chapman was charged with, China was a "district" under the governing provision. This is a far cry from a conclusion that a territorial court vested with a less explicit grant of power may try federal cases. *See Harlow v. United States*, 301 F.2d 361, 370 (5th Cir.) (a United States territory is not a district under § 3238 "unless the court having jurisdiction over that territory is invested with the same power as ordinary district courts"), *cert. denied*, 371 U.S. 814, 83 S.Ct. 25, 9 L.Ed.2d 56 (1962). Nothing in the laws passed by Congress relating to American Samoa comes close to stating that the courts of American Samoa have the authority possessed by the district courts of the United States. Accordingly, Lee's case is not analogous to *Chapman*.

### B. *18 U.S.C. § 3238.*

■ When an alleged offense against the laws of the United States is not committed in any district, such as when an alleged offense is committed in American Samoa, the trial of that offense "shall be in the district in which the offender ... is arrested or first brought." 18 U.S.C. § 3238. Although many judicial decisions mistakenly refer to § 3238 as a jurisdictional statute, § 3238 is clearly a venue

statute. *See United States v. Erdos*, 474 F.2d 157, 160 (4th Cir.) ("Venue, in cases of crimes committed outside any district, is controlled by 18 U.S.C. § 3238"), *cert. denied*, 414 U.S. 876, 94 S.Ct. 42, 38 L.Ed.2d 122 (1973); *see also United States v. Liang*, 224 F.3d 1057, 1059 (9th Cir.2000) ("To satisfy venue requirements under § 3238, the government must show that Zhou was 'first brought to' or 'arrested' in CNMI"); 2 Charles Alan Wright, *Federal Practice and Procedure* § 304 (3d ed.2000) at 333 ("Section 3238 is a venue statute").

 The term "first brought" in § 3238 only refers to situations in which the offender is returned to the United States already in custody. *Liang*, 224 F.3d at 1060. It is undisputed that the District of Hawaii was the district to which Lee was "first brought" after he was arrested and taken into custody. Accordingly, venue is proper in Hawaii under § 3238.[4]

 Venue is proper in Hawaii even if Lee was improperly brought into this district, and even if the government violated the extradition laws of American Samoa. *See Gillars v. United States*, 182 F.2d 962, 972 (D.C.Cir.1950) (noting that a defendant brought against her will from Germany to the District of Columbia could be tried in the District of Columbia "even assuming for present purposes that she was brought here unlawfully"); *Chandler*, 171 F.2d at

934 (stating that a court should not refuse to exercise jurisdiction over a fugitive from justice merely because that person was brought within the jurisdiction of the court by illegal means).

## V. CONCLUSION.

For the reasons set forth above, the District of Hawaii is the proper venue for Lee's trial. Lee's motion to dismiss is denied.

IT IS SO ORDERED.

---

4. Lee argues that Hawaii will become the de facto district court for American Samoa. Lee says that, because all flights from American Samoa fly to Hawaii, all defendants in custody removed from American Samoa will be "first brought" to Hawaii for purposes of § 3238. However, § 3238 also provides for a defendant's place of residence or the District of Columbia to be the venue for such prosecutions. *See* 18 U.S.C. § 3238. Moreover, the Ninth Circuit has not indicated whether it considers a defendant to be "first brought" to Hawaii even if the defendant's plane merely stops in Hawaii en route to another district.

*But see Chandler v. United States*, 171 F.2d 921, 927–28 (1st Cir.1948) (holding that venue was appropriate in Massachusetts when a plane flying to Washington, D.C., developed mechanical problems and was forced to land in Massachusetts, rendering the defendant "first brought" in Massachusetts), *cert. denied*, 336 U.S. 918, 69 S.Ct. 640, 93 L.Ed. 1081 (1949). Even if recognizing the District of Hawaii as the proper venue in this case opens the "floodgates," as Lee predicts, this court may not for that reason refuse to hear Lee's case, as that is the framework created by Congress.